IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| HOWARD DODSON | * |
| | * |
| v. | *   Civil No. JKS 13-2916 |
| | * |
| PRINCE GEORGE'S COUNTY, et al. | * |
| | * |

### MEMORANDUM OPINION

Presently pending is Defendants' unopposed Motion for Summary Judgment. ECF No. 49. The issues have been briefed and no hearing is necessary. *See* Local Rule 105.6. For the reasons set forth below, Defendants' motion will be granted.

**1. Background.**

Howard Dodson, in his individual capacity as Trayvon Dodson's father and as the personal representative of Trayvon Dodson's estate, filed suit against the Prince George's County Police Department,[1] the individual police officers involved, Prince George's County Police Chief Mark Magaw, and Prince George's County, claiming excessive force and that Prince George's County permitted customs and policies to exist that lead to Dodson's death. ECF No. 1 at ¶ 6-9. On September 25, 2014, the court bifurcated and stayed discovery relating to the County's customs and policies (the *Monell* claim). ECF Nos. 28, 33. On October 13, 2015, Defendants filed the pending Motion for Summary Judgment. ECF No. 49. Plaintiff did not file an opposition by the October 30, 2015 deadline. On November 19, 2015, the court ordered Plaintiff to show cause, by not later than December 1, 2015, why Defendants' motion for summary judgment should not be granted. ECF No. 51. Plaintiff has now failed to respond to

---

[1] There is no legal entity designated as the "Prince George's County Police Department." "Prince George's County, Maryland" is the relevant legal entity capable of defending this action as designated by section 103 of the County Charter and authorized by Article 25A of the Maryland Code. *Stewart v. Prince George's Cty., Maryland*, No. AW 01-302, 2001 WL 759890, at *3 (D. Md. May 23, 2001). The court will dismiss the Prince George's County Police Department as a party to the case.

Defendants' motion for summary judgment and the court's show cause order. He has thus failed to provide any evidence to support the allegations in the complaint or to rebut Defendants' evidence.

While Defendants' facts are undisputed and are accepted as true, the court still views the facts in the light most favorable to Plaintiff as the nonmoving party. On March 7, 2011, police officers from the Prince George's County Policy Department responded to a call reporting an individual brandishing a firearm and threatening residents. ECF No. 49-2 at ¶ 2-3. When officers arrived on the scene, they determined that Trayvon Dodson was the reported suspect. ECF No. 49-2 at ¶ 6-8. As Officer Herbert Aiken approached the scene, he saw several neighborhood residents in close proximity to Dodson. Dodson had a handgun in his waistband, and appeared to be under the influence of a controlled substance. Aiken told Dodson several times to take his hand off the gun, but Dodson instead pulled it from his waistband. Aiken then fired two rounds at Dodson's torso. Dodson did not fall and continued to withdraw his gun. As Dodson fired a shot, Aiken fired several more shots at Dodson. *Id.* at ¶ 2, 6, 10-17.

2. **Standard of Review.**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 343, 347 (1986). "For purposes of summary judgment, a fact is material if, when applied to the substantive law, it affects the outcome of the litigation." *Nero v. Baltimore Cnty., MD*, 512 F. Supp. 2d 407, 409 (D. Md. 2007) (citing *Anderson*, 477 U.S. at 248). "Summary judgment is also appropriate when a party 'fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Laura Campbell Trust v. John Hancock Life Ins. Co.*, 411 F. Supp. 2d 606, 609 (D. Md. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *Anderson*, 477 U.S. at 248-49. "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." *Bertrand v. Children's Home*, 489 F. Supp. 2d 516, 518 (D. Md. 2007) (citing Fed. R. Civ. P. 56(e)). "The facts, as well as the justifiable inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmoving party." *Id.* at 518-19 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)). "The court, however, cannot rely upon unsupported speculation and it has an affirmative obligation to prevent factually unsupported claims and defenses from proceeding to trial." *Id.* at 519 (citing *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

When a motion for summary judgment is unopposed, "the moving party must still show that the uncontroverted facts entitled the party to a judgment as a matter of law." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993) (internal quotation marks omitted).

**3. Discussion.**

Plaintiff's complaint consists of a wrongful death claim (Count I), an excessive force claim (Count II), a failure to intervene claim (Count III), an unlawful custom, practice and policy (*Monell*) claim (Count IV), and a deprivation of state civil rights claim (Count V). The court views Plaintiff's excessive force claim as primary and will address that claim first.

**A. Excessive Force (Count II).**

The Fourth Amendment guarantees the "right to be free from unreasonable searches and seizures, which encompasses the right to be free of arrests, investigatory stops, or other seizures effectuated by excessive force." *Schultz v. Braga*, 455 F.3d 470, 476 (4th Cir. 2006); *see also Graham v. Connor*, 490 U.S. 386, 388 (1989). Whether a law enforcement officer used excessive force depends on the "objective reasonableness" of the action in question. *Graham*, 490 U.S. at 388. The force used by an officer is not excessive if the officer's "actions are 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Id.* at 397; *Schultz*, 455 F.3d at 477. The use of deadly force is constitutionally reasonable "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

Civil liability, however, does not automatically attach even to constitutional violations. Government officials are entitled to qualified immunity as a matter of law so long as they have not violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In other words, courts ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Qualified immunity extends to government officials' objectively reasonable mistakes, "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "[T]he immunity inquiry must be filtered through the lens of the officer's perceptions at the time of the incident in question." *Rowland*, 41 F.3d at 173.

> Such a perspective serves two purposes. First, using the officer's perception of the facts at the time limits second-guessing the reasonableness of actions with the benefit of 20/20 hindsight. Second, using this perspective limits the need for decision-makers to sort through conflicting versions of the "actual" facts, and allows them to focus instead on what the police officer reasonably perceived. In sum, the officer's subjective state of mind is not relevant to the qualified immunity inquiry but his perceptions of the objective facts of the incident in question are.

*Id.* (citations omitted). The qualified immunity defense "protects all but the plainly incompetent or those who knowingly violate the law," and it "protects law enforcement officers from bad guesses in gray areas and ensures that they are liable only for transgressing bright lines." *Waterman v. Batton*, 393 F.3d 471, 476 (4th Cir. 2005) (citation and internal quotation marks omitted).

Here, Aiken's use of a firearm was objectively reasonable and thus did not violate clearly established law. Aiken saw that Dodson had a handgun and believed that he was under the influence of a controlled substance. When Dodson did not comply with Aiken's request to remove his hands from his handgun, and instead withdrew the handgun from his waistband, Dodson posed an immediate deadly threat and Aiken's decision to shoot him was objectively reasonable. *See Cole v. Prince George's Cty., Md.*, 798 F. Supp. 2d 739, 743 (D. Md. 2011) (concluding that the officers' decision to fire shots at a suspect was objectively reasonable because the suspect had previously brandished a gun, refused to obey commands to get on the ground, and reached for a gun in his waistband); *Jackson v. Pena*, 28 F. Supp. 3d 423, 430 (D. Md. 2014) (concluding that the police officers' use of deadly force was reasonable because the officers arrived at the scene following an exchange of gunfire and the officers had probable cause to believe that the shooters posed a significant threat of death to the officers or others). When Dodson then did not fall or surrender, but rather fired his gun, Aiken's decision to shoot him again was reasonable.

### B. Failure to Intervene (Count III).

Plaintiff asserts a separate claim for failure to intervene under 42 U.S.C. § 1983. The Fourth Circuit addresses a failure to intervene claim as a theory of "bystander liability" wherein there is "an omission to act . . . coupled with a duty to act." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 202 (4th Cir. 2002). A "bystander officer" could be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Id.* at 204. However, if no excessive force is applied by the fellow officer, the officer witnessing the conduct "cannot be held liable under bystander liability for a failure to intervene." *Howie v. Prince George's Cnty.*, Civ. No. DKC 2006-3465, 2009 WL 2426018, at *6 (D. Md. Aug. 5, 2009); *see also Jarvis v. Securitas Sec. Servs. USA*, Civ. No. AW 11-654, 2012 U.S. Dist. LEXIS 19573, *15-17 (D. Md. Feb. 16, 2012). Because the excessive force claim fails, the failure to intervene claim also fails.

### C. Wrongful Death (Count I).

Maryland's Wrongful Death Statute provides that "[a]n action may be maintained against a person whose wrongful act causes the death of another." MD. CODE ANN., CTS. & JUD. PROC. § 3-902(a). To succeed on a wrongful death claim, a plaintiff "'must show by a preponderance of the evidence that the conduct of [the] defendant was negligent and that such negligence was a proximate cause of the death of the decedent.'" *Young v. Swiney*, 23 F. Supp. 3d 596, 613 (D. Md. 2014) (quoting *Osunde v. Lewis*, 281 F.R.D. 250, 260 (D. Md. 2012)). The court has determined that the conduct here was reasonable, and thus not negligent. Accordingly, Plaintiff cannot sustain an action for wrongful death.[2] *See Sigman v. Town of Chapel Hill*, 161 F.3d 782,

---

[2] This claim also fails against the County because the cause of action giving rise to the wrongful death claim arose out of an incident in which the County was acting in a governmental capacity, and its governmental immunity shields it from liability. *See*

788-89 (4th Cir. 1998) (holding that wrongful death action must fail because the officer's actions were, as a matter of law, reasonable, and thus not negligent or wrongful).

### D. Maryland Declaration of Rights (Count V).

Plaintiff seeks relief under Articles 24 and 26 of the Maryland Declaration of Rights. Articles 24 and 26 "prohibit employment of excessive force during a seizure." *Henry v. Purnell*, 652 F.3d 524, 536 (4th Cir. 2011). Claims presented under Articles 24 and 26 are analyzed under the same standard as Fourth Amendment claims. *Id.*; *Jackson v. Pena*, 28 F. Supp. 3d 423, 431-32 (D. Md. 2014). Because Plaintiff's claim for excessive force under Section 1983 and the Fourth Amendment fails, his claim under Articles 24 and 26 of the Maryland Declaration of Rights also fails. *Jackson*, 28 F. Supp. 3d at 431-32.

### E. *Monell* Claim (Count IV).

Count IV, brought against Prince George's County, is dependent upon a finding that a government employee violated Plaintiff's constitutional rights. *Monell*, 436 U.S. at 694; *Spell v. McDaniel*, 824 F.2d 1380, 1385 (4th Cir. 1987). Here, because there will be no such underlying finding, the County is entitled to summary judgment as to Count IV.

## 4. Conclusion.

The Court will grant Defendants' motion for summary judgment as to all counts of Plaintiff's complaint.

Date: January 6, 2016                                           /S/
                                                                          Jillyn K. Schulze
                                                           United States Magistrate Judge

---

*Hirpassa v. Prince George's County*, 2010 U.S. Dist. LEXIS 68684, *34-35 (D. Md. July 8, 2010) (holding that governmental immunity protected the county from liability in a wrongful death action).